UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARRELL ERVIN,

    Plaintiff,

v.                                                                       Case No: 8:16-cv-2429-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

Plaintiff, Darrell Ervin, seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

    **A.**    **Procedural Background**

Plaintiff filed an application for a period of disability on August 13, 2012. (Tr. 109–10.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 109–10, 135–36.) Plaintiff then requested an administrative hearing. (Tr. 179.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 48–84.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 29–47.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a

Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning on June 30, 2010. (Tr. 230.) Plaintiff attended special education classes throughout high school and received a high school diploma. (Tr. 57–58.) Plaintiff's past relevant work experience includes work as a commercial cleaner and a janitor. (Tr. 74.) Plaintiff alleged disability due to back pain, poor vision, and a left arm impairment. (Tr. 310.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since June 30, 2010, the alleged onset date. (Tr. 34.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the severe impairment of right eye blindness. (Tr. 34.) Notwithstanding the noted impairment, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] can perform jobs that require no fine visual acuity such as found in assembling work. He retains sufficient vision to read documents or newspapers. He can perform no jobs requiring distance vision, defined beyond 15 to 20 feet. He cannot perform jobs requiring work around heights, balancing or around hazardous equipment.

(Tr. 37–38.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 39.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work. (Tr. 40.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 41.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national

economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in his RFC determination that Plaintiff has no exertional limitations; (2) the ALJ failed to fully and fairly

develop the record; and (3) the ALJ erred in assigning little weight to the medical opinion of advanced registered nurse practitioner ("ARNP") Doris Breiter. For the reasons that follow, none of these contentions warrant reversal.

A.  **Plaintiff's RFC**

Plaintiff first contends that the ALJ's RFC determination that Plaintiff has no exertional limitations is erroneous because he substituted his own opinion for that of an expert. (Dkt. 21 at 6–7.) Plaintiff argues that there is "no medical opinion evidence in the record that the claimant had no exertional limitations." (Dkt. 21 at 6.) Plaintiff does not specify what exertional limitations the ALJ should have found, but rather points to other evidence in the record that he contends demonstrate exertional limitations. (*Id.*)

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Further, while the ALJ should consider medical opinions regarding a claimant's ability to work in forming the RFC, the medical opinions are distinct from the RFC assessment. *Id.* §§ 404.1527, 404.1545, 416.913(a), 416.927, 416.945.[1]

---

[1] For claims filed before March 27, 2017, including Plaintiff's claim, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply.

Specifically, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Here, the ALJ determined that Plaintiff retained a RFC to perform a full range of work at all exertional levels. (Tr. 37–38.) Plaintiff argues that the ALJ erred because the ALJ acknowledged, but rejected, the opinion of the medical consultant to the State Disability Determination Services that Plaintiff is limited to light work. (Dkt. 21 at 6.) Plaintiff then addresses the ALJ's discussion of Dr. Robin Hughes' report. (*Id*.) In his consultative examination report, Dr. Hughes found that Plaintiff exhibited reduced grip strength in his left hand, could bend his knees without difficulty, had a slow wide-based gait, and did not require assistive devices. (Tr. 438.) Dr. Hughes further opined that Plaintiff had a chronic strain of his left wrist and chronic back spasms. (Tr. 438.) Last, Plaintiff addresses diagnostic testing he underwent wherein imaging of the lumbar spine revealed mild disc narrowing at L5-S1 and imaging of the thoracic spine revealed minimal right-sided scoliotic change, but was otherwise unremarkable. (Tr. 502–03.) Based on the imaging, Dr. Edgard Janer diagnosed Plaintiff with lumbago, unspecified osteoarthritis, and unspecified hypertension. (Tr. 501.)

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff has no exertional limitations. (Dkt. 25 at 5.) The Court agrees. As noted by the ALJ, in November 2010, Plaintiff received treatment at Tampa General Hospital for abdominal pain, hematuria, and a right femur bone lesion. (Tr. 35, 392.) Plaintiff's physical examination was unremarkable other than his kidney stones. (Tr. 385–89.) On June 28, 2011, Plaintiff underwent a consultative examination by Dr. Hughes for an earlier application for social security benefits that was denied. (Tr. 412–14.) Dr. Hughes diagnosed Plaintiff with a chronic lumbar strain/sprain and

vision deficit, but made no indication that these impairments would affect Plaintiff's ability to perform work. (Tr. 314.) Plaintiff returned to Tampa General Hospital in January 2012 to treat a rash after "cutting down an elephant tree." (Tr. 419.) Upon physical examination, Plaintiff exhibited a normal range of motion and reflexes and was ultimately treated for insect bites. (Tr. 420–21.) In December 2012, Plaintiff was involved in a bicycle accident. (Tr. 447.) Plaintiff suffered rib fractures and pneumothorax, but was able to move all of his extremities well with 5/5 strength intact. (Tr. 448.) He walked normally without difficulty. (Tr. 447.) Further, while Dr. Janer diagnosed Plaintiff with lumbago and osteoarthritis in May 2014, Plaintiff's physical examination was unremarkable other than a decreased range of motion in Plaintiff's spine. (Tr. 500–01.) Dr. Janer found that Plaintiff had normal muscle strength and tone and his gait and station were unremarkable. (Tr. 501.) Plaintiff's daily activities further support the ALJ's RFC finding as the record reflects that Plaintiff is able to ride a bicycle and cut down trees. (Tr. 419, 436, 447.) Therefore, the ALJ's finding that Plaintiff has no exertional limitations is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (affirming the ALJ's RFC determination as supported by substantial evidence despite claimant's citing other record evidence to challenge the ALJ's RFC assessment).

Additionally, to the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Id*. (quoting *Bloodsworth,* 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial

evidence even if the evidence may preponderate against it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

B.  **Development of the Record**

Plaintiff next contends that the ALJ failed to fully and fairly develop the record. (Dkt. 21 at 7.) Specifically, Plaintiff argues that the ALJ failed to order a consultative examination of Plaintiff's psychological difficulties. (*Id*.) Plaintiff contends that although Plaintiff did not allege mental impairments initially or upon reconsideration, the record contains evidence of Plaintiff's psychiatric impairment and, therefore, the ALJ should have ordered a consultative examination. (*Id*. at 8–9.) In support of his argument, Plaintiff relies on his July 2014 treatment by Ms. Breiter, ARNP, at the Neuropsychiatric Institute. (*Id*. at 8.) Ms. Breiter opined that Plaintiff had a history of depression and his symptoms increased after his brother died in 2012. (Tr. 526.) Ms. Breiter noted that Plaintiff was prescribed Zoloft from his primary care physician. (Tr. 523.) She assigned Plaintiff a global assessment of functioning score of 51-60 and noted a diagnostic impression that Plaintiff had a "major depressive disorder, recurrent, moderate." (Tr. 525–26.)

As further discussed below, the ALJ appropriately assigned Ms. Breiter's opinion little weight. Further, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The regulations "may require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b).

Here, the record contains sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's mental impairments. For example, the record reflects that in January 2012,

Dr. James Gillen examined Plaintiff and found that he exhibited normal mood, affect, behavior, judgment, and thought content. (Tr. 420–21.) In January 2013, Plaintiff was treated at the Tampa Eye Clinic and again found to have normal mood and affect and was noted as oriented to person, place, and time. (Tr. 485–89.) In May 2014, Dr. John Delgado treated Plaintiff for heartburn and found that Plaintiff had a normal mood and affect. (Tr. 507–09.) Plaintiff's symptoms were negative for altered mental status, depression, hallucinations, memory loss, insomnia, and anxiety. (Tr. 508.) Further, in May 2014, Plaintiff reported anxiety and depression to Dr. Janer. (Tr. 500.) However, upon examination, Dr. Janer found that Plaintiff was not in acute distress, had a mood and an affect that was appropriate for the situation, and had a normal concentration and attention span. (Tr. 501.) Overall, Dr. Janer did not find any psychological impairments. (*Id.*) Thus, the ALJ's findings regarding Plaintiff's mental impairments were based on ample record evidence. Accordingly, the ALJ was not required to obtain a consultative examination for Plaintiff, and Plaintiff's contention does not warrant reversal. *Ingram*, 496, F.3d at 1269.

### C. Weight Assigned to Ms. Breiter's Opinion

In his last contention, Plaintiff argues that the ALJ erred in assigning Ms. Breiter's July 2014 medical opinion little weight. (Dkt. 21 at 9.) Plaintiff concedes that the ALJ may ultimately give less weight to the opinion of a nurse practitioner than a psychologist or psychiatrist, but argues that the ALJ "cannot disregard the opinion or give the opinion little weight simply because the provider was a nurse practitioner." (*Id.*)

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. 20 C.F.R. § 404.1527(a)(2). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons

therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211.

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

However, nurse practitioners are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). As such, their opinions are not considered "medical opinions" and cannot establish the existence of an impairment, although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Crawford*, 363 F.3d at 1160). Notably, because nurse practitioners are not acceptable medical sources, their opinions are not entitled to substantial weight. *Id.*

In evaluating the opinion of Ms. Breiter, the ALJ noted Ms. Breiter's findings, including Plaintiff's assigned global assessment of functioning score of 51-60 and the impression that Plaintiff had a "major depressive disorder, recurrent, moderate." (Tr. 525–26.) The ALJ further noted that Plaintiff's physical examination was within normal limits, his memory was intact, and he had good attention, concentration, insight, and judgment. (Tr. 36, 525.) The ALJ then assigned Ms. Breiter's opinion little weight, noting that as a nurse, she is not an acceptable medical source. (Tr. 37.) Further, the ALJ indicated that Ms. Breiter provided inconsistent opinions regarding Plaintiff's impairments and that her physical examination of Plaintiff supported the conclusion that Plaintiff's impairments were non-severe. (*Id.*)

As noted above, the opinions of nurse practitioners are not entitled to substantial weight, and therefore the ALJ was not required to afford any weight to Ms. Breiter's opinion. Nevertheless, the ALJ properly considered her opinion as a treating source but found good cause to afford the opinion limited weight, after considering the evidence as a whole, because the severity of the limitations in her opinion was inconsistent with the objective medical evidence. (Tr. 37.) As discussed above, the ALJ's reasons are supported by substantial evidence. Therefore, the ALJ did not err in affording little weight to Ms. Breiter's opinion.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 2, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record